(No. 69160.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RANDY G. MINK, Appellee.

*Opinion filed November 30, 1990.—Rehearing denied February 4, 1991.*

Neil F. Hartigan, Attorney General, of Springfield, and Fred Foreman, State's Attorney, of Waukegan (Robert J. Ruiz, Solicitor General, Terence M. Madsen and Marcia L. Friedl, Assistant Attorneys General, of

Chicago, and Kenneth R. Boyle, John X. Breslin and Terry A. Mertel, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Paul J. Glaser, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE WARD delivered the opinion of the court:

The defendant, Randy Mink, was convicted, following a jury trial in the circuit court of Lake County, of unlawful possession and unlawful delivery of a controlled substance. (Ill. Rev. Stat. 1987, ch. 56½, pars. 1401(a)(2), 1402(a)(2).) The defendant filed a post-trial motion alleging, *inter alia*, that the State failed to introduce sufficient evidence of venue. Judge John L. Hughes, who presided at trial, granted the defendant's motion for a new trial. The State subsequently filed a motion for reconsideration of the trial court's order. This motion was heard and granted by Judge Goshgarian, who vacated the new trial order and reinstated the defendant's convictions. The court then sentenced the defendant to six years' imprisonment on the delivery charge and fined him $3,600, the "street value" of the cocaine. The defendant appealed. The appellate court reversed, holding that Judge Hughes' ruling on the defendant's post-trial motion was, in substance, an acquittal, and that double jeopardy principles barred the trial court from reconsidering the order. (186 Ill. App. 3d 316.) We granted the State's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The defendant was charged by indictment with two counts of unlawful possession of a controlled substance and two counts of unlawful delivery of a controlled substance. (Ill. Rev. Stat. 1987, ch. 56½, pars. 1401(a)(1),

1402(a)(2).) The charges stemmed from the defendant's participation in two drug transactions, one occurring on February 6, 1986, involving less than 10 grams of cocaine, and another occurring on February 11, 1986, involving more than 30 grams of cocaine. At the outset of the defendant's trial, the prosecution informed the trial court that it intended to proceed only with the charges stemming from the February 11 transaction, which involved the greater quantity of cocaine. The trial judge (Judge John L. Hughes) ruled that the prosecution would be barred from introducing evidence as to the February 6 drug transaction unless the defendant raised the affirmative defense of entrapment to the February 11 drug charges. Once the defendant raised the entrapment defense before the jury, evidence of the February 6 drug transaction would be admissible to rebut the entrapment defense by showing predisposition to commit the February 11 drug offenses. Defense counsel raised the defense of entrapment in his opening statement. The prosecution thereafter presented evidence as to the February 6 and the February 11 drug transactions through the testimony of Robert Chesney, a Lake County police officer.

Officer Chesney testified that he worked in an undercover capacity in the Lake County Metropolitan Enforcement Group. Chesney testified that he contacted the defendant by telephone and arranged to purchase an eighth of an ounce of cocaine from the defendant. After several phone calls, the defendant and Chesney agreed that the sale and delivery of the cocaine would take place on February 6, 1986. They agreed to meet in the parking lot of the defendant's place of employment. Chesney testified that the employer was located in Waukegan, in Lake County. Chesney testified that the defendant met him in the parking lot as planned, and gave him a clear plastic bag containing a white substance. Chesney then gave the defendant $270 in cur-

rency. Chesney testified that, after the transaction, he conducted a field test of the white substance, which revealed that the substance was cocaine. The parties later stipulated that the powder, which weighed 3.3 grams, contained cocaine.

Chesney testified that he contacted the defendant again by telephone on February 10 to inquire about the price of two ounces of cocaine. The defendant told Chesney that he would check on the price and that Chesney should call him back later. When Chesney called the defendant later that afternoon, the defendant agreed to sell Chesney two ounces of cocaine for $3,600. Chesney testified that he agreed to meet the defendant at the defendant's place of employment at 1 o'clock the next day. Chesney testified that he telephoned the defendant on the evening of February 10 and asked him if the deal was "still going to go on at the same time and the same place" and the defendant said yes. Chesney testified that he met the defendant in the parking lot the next day, February 11, 1986, as proposed. Chesney testified that, after the defendant gave him two clear plastic bags containing a white substance, he weighed the substance on a scale and activated a prearrest signal. The defendant was then arrested. The parties stipulated that the substance in the two bags weighed 55.79 grams and contained cocaine.

Officer James Schlesser and Officer Michael Soler also testified for the State. Schlesser and Soler testified that they worked in the Lake County Metropolitan Enforcement Group and were part of a team which conducted surveillance of the February 11 drug transaction between Officer Chesney and the defendant. Officer Schlesser testified that he followed Officer Chesney to defendant's employer in Waukegan on February 11 but did not actually see the drug transaction. Officer Soler testified that he recorded the activity at Chesney's auto-

mobile during the drug transaction on a video camera. This video tape was played for the jury.

Following the close of the prosecution's case, the defense moved for a directed verdict based, in part, on the argument that the State had failed to establish venue for the offense. The trial court denied the motion. After a recess, defense counsel reasserted his contention that the State had failed to establish that the February 11 transaction occurred in Lake County. Defense counsel argued that the only testimony as to venue was offered as to the February 6 delivery, not the February 11 delivery. He conceded that the testimony established that the February 11 transaction occurred at the defendant's place of employment, but argued that the testimony did not establish where the employer was located. The trial court again denied the defendant's motion. The defense rested without presenting evidence. The jury subsequently returned guilty verdicts against the defendant on the unlawful possession and delivery charges stemming from the February 11 transaction.

The defense filed a post-trial motion for a new trial or, in the alternative, reversal of his convictions. The defendant alleged that the State had failed to introduce any evidence which could properly be considered in establishing venue for the February 11 transaction. Judge Hughes granted the defendant's motion and set a new trial date.

On November 26, the State filed a notice of intent to file a motion for reconsideration of Judge Hughes' November 19, 1986, new trial order. The motion to reconsider was filed on January 29, 1987, and was heard by Judge Goshgarian on March 26, 1987. Judge Goshgarian granted the State's motion to reconsider, vacated the new trial order and entered judgment on the jury's verdicts. The defendant was sentenced to six years' imprisonment and ordered to pay a $3,600 fine.

As stated, the appellate court reversed. The appellate court concluded that Judge Hughes granted the defendant's motion for a new trial because he found that the State failed to introduce sufficient evidence to prove venue. The appellate court held that such a finding was, in effect, an acquittal. The appellate court concluded that the double jeopardy clause barred the State from seeking reconsideration of an order which was, in substance, an acquittal. 186 Ill. App. 3d 316.

The litigants devote a significant portion of their briefs to the question whether Judge Hughes' order granting the defendant a new trial was, in legal effect, an acquittal. We conclude that it is unnecessary to address that question, and will assume, purely for the sake of argument and no more, that the new trial order was, in substance, an acquittal. The only relevant and dispositive question for our review is whether the State or the Federal Constitution prohibited the trial court from vacating that new trial order and from reinstating the defendant's convictions. Specifically, we must consider: (1) whether article VI, section 6, of the Illinois Constitution barred the State from seeking reconsideration of the new trial order; and (2) whether the double jeopardy clauses of the State and Federal Constitutions barred the trial court from reconsidering and vacating the new trial order. We do not consider whether Judge Hughes erred in granting a new trial on the ground that the State failed to consider venue.

The defendant first claims that the State was barred from seeking reconsideration of the trial court's order by article VI, section 6, of our constitution. That constitutional provision states, in part, that "after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal." (Ill. Const. 1970, art. VI, §6.) We agree with the defendant that, assuming that the trial court's order was, in effect, an acquittal, article VI, sec-

tion 6, barred the State from filing an appeal from that order. (*People v. Van Cleve* (1982), 89 Ill. 2d 298 (State may not appeal from a judgment of acquittal notwithstanding the verdict).) The constitutional prohibition of State appeals from judgments of acquittals is not applicable here, however, because the State did not appeal Judge Hughes' order. Rather, it moved for reconsideration of the order.

A court in a criminal case has inherent power to reconsider and correct its own rulings, even in the absence of a statute or rule granting it such authority. (*People ex rel. Daley v. Crilly* (1985), 108 Ill. 2d 301, 305; *People v. Van Cleve* (1982), 89 Ill. 2d 298.) A court's power to reconsider and correct its decisions extends to interlocutory, as well as final, judgments. *People ex rel. Daley v. Crilly* (1985), 108 Ill. 2d 301; *People v. Van Cleve* (1982), 89 Ill. 2d 298 (trial judge reconsidered interlocutory order denying the defendant's motion for directed verdict and entered a judgment of acquittal notwithstanding the verdict); *People v. Heil* (1978), 71 Ill. 2d 458 (trial judge vacated final order discharging the defendant because of failure to grant the defendant a speedy trial).

Even if the trial court here correctly determined that the State's evidence was insufficient to establish venue, it did not enter a final judgment of acquittal. Rather, it granted the defendant's motion for a new trial. This order was interlocutory in nature. (See *People v. Allen* (1978), 71 Ill. 2d 378.) The court set the matter for a new trial and thereby retained jurisdiction of the defendant and the indictment. So long as the case was pending before it, the trial court had jurisdiction to reconsider any order which had previously been entered. *People ex rel. Daley v. Crilly* (1985), 108 Ill. 2d 301, 305; *People v. Van Cleve* (1982), 89 Ill. 2d 298; *People v. Heil* (1978), 71 Ill. 2d 458.

The defendant argues that even if the court had jurisdiction to entertain the State's motion to reconsider, it was barred by the double jeopardy clauses of the State and Federal Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, §10) from reconsidering and reversing the order granting the defendant a new trial. The State responds that the defendant is barred by waiver principles from claiming that reconsideration of the new trial order violated his rights under the double jeopardy clauses. The record discloses that the defendant appeared to agree with the trial court's statements at the evidentiary hearing on the defendant's post-trial motion that a new trial would not be barred by double jeopardy principles. The defendant also did not raise a double jeopardy claim when the State moved for reconsideration and vacation of the new trial order, or at the sentencing hearing. The defendant first raised the double jeopardy issue on appeal from his convictions and sentence. *People v. Scales* (1960), 18 Ill. 2d 283 (failure to raise the defense of double jeopardy before judgment in the trial court waives the defense).

The defendant acknowledges his procedural default, but argues that the double jeopardy claim may be considered under the plain error rule. (107 Ill. 2d R. 615(a).) That rule provides that plain errors affecting substantial rights may be noticed on appeal, although not raised in the trial court. The plain error rule permits a reviewing court to consider a trial error not properly preserved for review in two circumstances. First, the error may be considered where the evidence in a criminal case is closely balanced. This prong of the plain error rule is not applicable here because the evidence at the defendant's trial cannot reasonably be regarded as closely balanced.

The plain error rule also may be invoked where the error is so fundamental and of such magnitude that the accused was denied a fair trial. The rule is invoked

where it is necessary to preserve the integrity of the judicial process and provide a fair trial. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576-77.) Here, we will first examine the record to ascertain whether error occurred and, if so, then determine whether the error must be regarded as plain error.

The fifth amendment of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." (U.S. Const., amend. V.) Article I, section 10, of our constitution likewise provides that no person shall "be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, §10.

The United States Supreme Court has repeatedly distinguished, for double jeopardy purposes, between judgments reversing convictions because of trial error and those reversing convictions for evidentiary insufficiency. (*Lockhart v. Nelson* (1988), 488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285; *Burks v. United States* (1978), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141.) Reversal for trial error is a determination that the defendant has been convicted through a judicial process which is defective in some fundamental respect; *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions or prosecutorial misconduct. (*Burks v. United States* (1978), 437 U.S. 1, 15, 57 L. Ed. 2d 1, 12, 98 S. Ct. 2141, 2149.) The double jeopardy clause does not preclude retrial of a defendant whose conviction is set aside because of an error in the proceedings leading to the conviction. *Burks v. United States* (1978), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141.

Reversal for evidentiary insufficiency, on the other hand, occurs when the prosecution has failed to prove its case and the only proper remedy is a judgment of acquittal. The double jeopardy clause precludes the State from retrying a defendant once a reviewing court has deter-

mined that the evidence introduced at trial was legally insufficient to convict. *Tibbs v. Florida* (1982), 457 U.S. 31, 72 L. Ed. 2d 652, 102 S. Ct. 2211; *Burks v. United States* (1978), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141; *People v. Holloway* (1982), 92 Ill. 2d 381.

As stated, we are assuming, purely for the sake of argument, that the trial court's order was, in effect, an acquittal; that is, a determination that the evidence at trial was insufficient to show proper venue. Because the trial court determined that the evidence was insufficient to convict, the double jeopardy clause prohibited the State from trying the defendant again for the same offense, and the trial court erred in ordering a new trial on the February 11 drug offenses. (*Hudson v. Louisiana* (1981), 450 U.S. 40, 67 L. Ed. 2d 30, 101 S. Ct. 970 (where trial judge at defendant's first trial granted defendant's motion for new trial on the ground that the State's evidence was insufficient to prove guilt, the defendant's second trial was barred by the double jeopardy clause).) The trial court could not give the State a second opportunity to supply evidence which it failed to muster in the first proceeding. *Tibbs v. Florida* (1982), 457 U.S. 31, 72 L. Ed. 2d 652, 102 S. Ct. 2211; *Green v. United States* (1957), 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223; see also *United States v. Wilson* (1975), 420 U.S. 332, 43 L. Ed. 2d 232, 95 S. Ct. 1013.

Of course, the fact remains that the defendant was never actually subjected to a second trial for the February 11 drug offenses. Rather, the trial court reconsidered and vacated the post-trial order granting the defendant a new trial and entered judgment on the guilty verdicts returned by the jury. The defendant argues, however, that the double jeopardy clause barred the trial court from reconsidering and vacating the new trial order.

As authority for this contention, the defendant cites a number of decisions of this court and of our appellate court, which hold that article VI, section 6, of our constitution prohibits the State from appealing from a judgment of acquittal. (See, *e.g., People ex rel. Daley v. Crilly* (1985), 108 Ill. 2d 301; *People v. Van Cleve* (1982), 89 Ill. 2d 298; *People v. Augitto* (1971), 1 Ill. App. 3d 78.) As stated, however, article VI, section 6, is not applicable here because the State did not appeal the trial court's order; it simply asked the trial court to reconsider the order. Moreover, decisions interpreting the scope of article VI, section 6, are not relevant to the double jeopardy claim raised here, because article VI, section 6, provides defendants with rights and protections beyond those assured by the double jeopardy clause. *People v. Van Cleve* (1982), 89 Ill. 2d 298, 307.

Decisions of the Supreme Court also do not support the defendant's claim that the double jeopardy clause bars any type of review of a judgment of acquittal. The Supreme Court has held that the government may seek appellate review of certain judgments of acquittal, under a Federal statute which permits the government to appeal in criminal cases except "where the double jeopardy clause of the United States Constitution prohibits further prosecution." (*United States v. Wilson* (1975), 420 U.S. 332, 338, 43 L. Ed. 2d 232, 238, 95 S. Ct. 1013, 1019, citing 18 U.S.C. §3731 (1987).) The Supreme Court has held that the primary purpose of the double jeopardy clause is to protect defendants from multiple trials for the same offense, rather than to shield every determination favorable to the defendant from appellate review. *United States v. Wilson* (1975), 420 U.S. 332, 43 L. Ed. 2d 232, 95 S. Ct. 1013.

Because the primary purpose of the double jeopardy clause is to prevent successive trials, the clause is not necessarily offended when the State seeks appellate re-

view of judgments of acquittals. (*United States v. Wilson* (1975), 420 U.S. 332, 43 L. Ed. 2d 232, 95 S. Ct. 1013.) The Court has held that the double jeopardy clause does prohibit appellate review of a judgment of acquittal where the defendant will be subject to a second trial for the same offense if the government's appeal is successful. Where there is no threat of successive prosecutions if the government's appeal is successful, the double jeopardy clause does not prohibit appellate review of a judgment of acquittal. *United States v. Wilson* (1975), 420 U.S. 332, 43 L. Ed. 2d 232, 95 S. Ct. 1013.

For example, the double jeopardy clause is offended when the State appeals from a jury's verdict of acquittal, because a successful appeal would necessitate another trial for the same offense. (*United States v. Jenkins* (1975), 420 U.S. 358, 370, 43 L. Ed. 2d 250, 259, 95 S. Ct. 1006, 1013.) Double jeopardy principles also bar the State from seeking appellate review of a directed verdict of acquittal entered by a trial judge after jeopardy attaches but before a verdict is rendered, because a successful appeal would require a second trial or further proceedings devoted to resolving the factual issues going to the elements of the offense charged. *United States v. Jenkins* (1975), 420 U.S. 358, 370, 43 L. Ed. 2d 250, 259, 95 S. Ct. 1006, 1013.

In *Fong Foo v. United States* (1962), 369 U.S. 141, 7 L. Ed. 2d 629, 82 S. Ct. 671, for example, the trial court directed jury verdicts of acquittal at the close of all the evidence. The Court of Appeals entertained the government's appeal from the judgments of acquittal and reversed the trial court's ruling on the ground that the judge was without power to direct acquittals under the circumstances disclosed by the record. The Supreme Court reversed, holding that, although the the acquittal was based upon an "egregiously erroneous foundation," the verdict of acquittal was nevertheless final, and could

not be reviewed without putting the defendants twice in jeopardy and thereby violating the Constitution. *Fong Foo*, 369 U.S. at 143, 7 L. Ed. 2d at 631, 82 S. Ct. at 672.

Similarly, in *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 51 L. Ed. 2d 642, 97 S. Ct. 1349, the trial court entered a judgment of acquittal after a deadlocked jury was discharged because it was unable to reach a verdict at the defendant's criminal contempt trial. The Court of Appeals held that the double jeopardy clause barred the government from appealing the judgment. The Supreme Court affirmed, holding that the normal policy granting the government the right to retry a defendant after mistrial does not apply where valid judgments of acquittal are entered by the trial court after jeopardy attaches and before a verdict is reached. The Court held that the double jeopardy clause barred the government's appeal, because "a successful governmental appeal reversing the judgments of acquittal would necessitate another trial, or, at least, 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.' " *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 570, 51 L. Ed. 2d 642, 650, 97 S. Ct. 1349, 1354, quoting *United States v. Jenkins* (1975), 420 U.S. 358, 370, 43 L. Ed. 2d 250, 259, 95 S. Ct. 1006, 1013.

The double jeopardy clause does not bar appellate review of a judgment of acquittal, however, where a successful government appeal does not expose the defendant to the possibility of a second trial for the same offense. (*United States v. Wilson* (1975), 420 U.S. 332, 43 L. Ed. 2d 232, 95 S. Ct. 1013.) For example, where the jury returns a verdict of guilty but the trial court thereafter enters a judgment of acquittal notwithstanding the verdict, the double jeopardy clause does not pro-

hibit the State from appealing the judgment of acquittal. If the appeal is successful and the appellate court concludes that the judgment of acquittal was improper, the criminal defendant is not required to submit to a second trial; the error of law may be corrected on remand by simply reinstating the jury's verdict. *United States v. Wilson* (1975), 420 U.S. 332, 43 L. Ed. 2d 232, 95 S. Ct. 1013 (Following a jury verdict of guilty, the trial judge dismissed the indictment on the ground that delay between the offense and the indictment prejudiced the defendant's right to a fair trial. The Court held that the government could properly appeal from the trial court's ruling since a ruling in the government's favor on appeal would not subject the defendant to another trial, but would merely reinstate the verdict of guilty).

Similarly, when a judgment of conviction is entered in the trial court, and that judgment is later reversed for insufficient evidence in the appellate court, the judgment of the appellate court may be appealed without offending the double jeopardy clause. (*United States v. Wilson* (1975), 420 U.S. 332, 43 L. Ed. 2d 232, 95 S. Ct. 1013; *Forman v. United States* (1960), 361 U.S. 416, 426, 4 L. Ed. 2d 412, 420, 80 S. Ct. 481, 487.) Review of such an order does not offend the policy against multiple prosecutions, because any error which occurred in the appellate court may be corrected on remand by simply entering judgment on the jury's verdict of guilty or the judge's finding of guilty.

Applying these principles here, we conclude that the double jeopardy clauses of the State and Federal Constitutions were not offended when the trial court reconsidered and vacated the order granting the defendant a new trial. As stated, the jury returned verdicts finding the defendant guilty of the February 11, 1986, offenses. The trial court entered a post-verdict ruling granting the defendant a new trial. Although reconsideration of that

ruling obviously subjected the defendant to continuing expense and anxiety, it did not expose him to the possibility of a second trial on the merits. Rather, when the trial court determined that the new trial order was improper, it simply vacated that order and reinstated the jury's verdict.

The defendant cites *People v. Stout* (1982), 108 Ill. App. 3d 96, as authority for his claim that reconsideration of the new trial order violated double jeopardy principles. In *Stout*, the defendant was charged with two counts of forgery and other offenses. After the State rested its case, the trial judge granted the defendant's motion for a directed verdict on one of the forgery counts, stating: " 'I am going to direct the verdict on Count Nine because the document was not completed in [this] County. *** [T]he Court will direct—enter a directed verdict of not guilty as to Count Nine.' " (*People v. Stout* (1982), 108 Ill. App. 3d 96, 98.) Later that day, the prosecutor moved for reconsideration and the trial judge subsequently ordered the directed verdict "withdrawn." The defendant was ultimately convicted of the disputed forgery count. The appellate court reversed, holding that the granting of a motion to direct a verdict was tantamount to a judgment of acquittal. The court held that vacation or reversal of the directed verdict was improper, and that the defendant's conviction on the forgery count violated double jeopardy principles.

We find the facts in *Stout* distinguishable. In *Stout*, the trial court granted the defendant's motion for a "directed verdict of not guilty" before the case was submitted to the jury. Reconsideration and vacation of that order necessarily exposed the defendant to further proceedings devoted to resolving the factual elements of the offense, in violation of the double jeopardy clauses. (See *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 51 L. Ed. 2d 642, 97 S. Ct. 1349.) Here,

on the other hand, the trial court entered an order which was tantamount to an acquittal, *after* the jury returned a verdict finding the defendant guilty of the offenses. Reconsideration and vacation of that order did not necessitate another trial or require further proceedings devoted to resolving the factual elements of the offense. Rather, the trial court simply vacated the order and entered judgment on the jury's verdict of guilt. Review of the new trial order did not offend the policy against multiple trials for the same offense, or place the defendant twice in jeopardy for the same offense.

Because we conclude that the trial court did not violate double jeopardy principles when it reconsidered the new trial order and entered judgment on the jury's findings of guilt, we need not address the defendant's claim that double jeopardy claims must be considered under the plain error rule.

For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court reinstating the convictions for unlawful possession and delivery of a controlled substance is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*