THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK AGUILAR, Defendant-Appellant.

First District (1st Division)   No. 1—89—0800

Opinion filed July 22, 1991.

Elliot Samuels, of Chicago (Dennis VanDerGinsdt, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Defendant Frank Aguilar appeals from a bench trial finding of guilt and seven-year sentence for delivery of controlled substances (Ill. Rev. Stat. 1987, ch. 56½, par. 1401). Defendant contends on appeal: (1) the circuit court erred in finding as a matter of law that defendant could not be entrapped by a confidential police informant who also happened to be defendant's longtime friend; (2) the State failed to rebut defendant's entrapment defense by proof beyond a reasonable doubt; and (3) he was denied a fair trial when the circuit court granted a seven-week continuance rather than a new trial as a sanction against the State for its failure to disclose favorable evidence which defendant had specifically sought in his pretrial discovery request. Because we believe the State's discovery violation operated to prejudice defendant's defense, we reverse and remand for a new trial.

The State called Sergeant Thomas West and Officer Richard Handley of the Chicago police department. They testified that in the spring and summer of 1987, they were working on Operation Bridgeport, a long-range narcotics investigation in the Bridgeport area of Chicago. As part of this investigation, West worked undercover and with informants to make purchases of narcotics.

West's testimony related that in April, May and June 1987, he worked undercover with Ted Stiltner, a paid informant and lifelong Bridgeport resident, to make three drug purchases from defendant. In total, Stiltner arranged 30 transactions during the course of the investigation resulting in 45 indictments.

Prior to the April transaction, West and Stiltner discussed the possibility of arranging a narcotics transaction with defendant. Although West knew that defendant frequented the Bridgeport area, West knew nothing of defendant prior to this time. West also advised Stiltner concerning safety issues, "street lingo," the prices West would pay, and on how the drug transaction should be performed.

West testified that on April 25, 1987, Stiltner introduced West to defendant as Stiltner's co-worker at a garage near 43rd and Union in Chicago. West explained to defendant that he already had a cocaine supplier but asked defendant if he could supply phencyclidine or PCP. Defendant told West that he could supply West with that drug and the two discussed the sale of a sample amount to test the quality of defendant's source. According to West, he and defendant "haggled"

over the price until they agreed on $150 for an "eight-ball" or an eighth of an ounce of PCP.

Defendant told West to wait while he went and obtained the PCP. Defendant returned shortly thereafter with the drugs and West paid the $150. West told defendant that he would get back to him on the drug's quality. Defendant assured West that he could supply anything West needed, that he would be in the area and that West could use Stiltner to reach him.

On May 15, 1987, defendant met again with West and Stiltner. Using the same procedure, defendant sold West an ounce of PCP for $1,200.

On June 3, 1987, at 8 p.m., at 43rd Street and Union, West and Stiltner again met with defendant and discussed the purchase of 1½ ounces of PCP. Defendant and West agreed on a price of $1,800. Defendant told West that he would return with the drugs at 9:30 p.m.

West arranged surveillance while defendant was away. Defendant returned at the agreed time and pulled his car alongside West's vehicle. Defendant told West to follow him. Defendant drove through the neighborhood for 10 minutes. While driving, defendant repeatedly changed directions and looked in his rear-view mirror. Eventually, defendant led West to 12th Street Beach, where they parked and exited their cars. West testified that after defendant looked around the area, West exchanged $1,800 for the PCP. West later met with Officer Handley, the surveillance officer, at a prearranged spot. Officer Handley later testified and corroborated West's testimony regarding the June 3 transaction.

On cross-examination, West testified that Stiltner was paid $110 for the June 3 delivery and $50 for the April 25 delivery. Stiltner and West had no express pay agreement; West's payments to Stiltner were within West's discretion and varied according to the type and amount of drugs involved.

West testified he was aware that the seriousness of a narcotics offense was based on the weight of the drugs. He noted that one of Operation Bridgeport's purposes was to get Class X felonies against individuals. As of May 15, West testified he needed one more case on defendant in order to get a Class X felony. He was aware that it would take beyond 30 grams of PCP to meet the statutory minimum for a Class X amount of PCP.

West admitted that he never attempted to arrange any narcotics transactions with defendant without Stiltner being present. West was never present when defendant and Stiltner had discussions prior to

each drug transaction. West denied ever going to defendant's residence.

Mildred Diaz, defendant's mother, Mario Aguilar, defendant's brother, and defendant testified for the defense. Diaz and Mario Aguilar testified that during the spring and summer months of 1987, Stiltner came to the house several times looking for defendant. Mario Aguilar added that on one occasion, Stiltner waited for defendant in his car along with an unidentified passenger.

Defendant testified that he had known Stiltner since childhood. At the times in question, he was working for the Coca-Cola Company. He had never been arrested before for any narcotics-related offenses.

Defendant testified that prior to the April 1987 transaction, Stiltner approached him and requested that defendant supply him with drugs. Defendant declined to assist Stiltner but Stiltner persisted, saying he needed money to get a lawyer. Defendant declined again, but eventually, he agreed to help Stiltner.

Defendant testified that Stiltner gave defendant money to purchase drugs as well as instructions on how and where to purchase them. For the April transaction, defendant went to a local bar and asked to buy an "eight-ball." A man named Jose sold him the drugs. Afterwards, defendant drove to where Stiltner instructed defendant to meet him. There, defendant gave Stiltner the drugs. Defendant noticed that someone was in Stiltner's car but could not recognize who it was.

After this transaction, Stiltner asked defendant to do more transactions on four or five other occasions. Defendant related that Stiltner even started crying, asking for help for his family's sake. Defendant eventually agreed to help Stiltner. On May 15, defendant made a purchase of one ounce of PCP for Stiltner. Defendant again purchased it from Jose and delivered it to Stiltner at an agreed upon location. Again, defendant could see an individual in Stiltner's car but could not identify that person.

Prior to the June 3 transaction, Stiltner again approached defendant on numerous occasions. Defendant declined to assist Stiltner and told him to find someone else. Eventually, after persistent begging, defendant agreed to help Stiltner.

Regarding the June 3 transaction, defendant met Stiltner at a gas station at 43rd and Union. Defendant again noticed that Stiltner had someone in the car. Stiltner gave defendant instructions and $1,200 to buy 1½ ounces of PCP. Defendant then went to purchase the drugs and returned to the gas station. Defendant flashed his lights as in-

structed and then proceeded to the 12th Street Beach. There, defendant gave Stiltner the drugs; the two men then parted.

Defendant testified that he never made any money from the transactions. He was arrested on July 7, 1987, at his house. No drugs, paraphernalia or money was found in his house or on his person at the time of his arrest.

After defense rested, the State rested without presenting a rebuttal case. Based on the evidence, the court found defendant guilty. In its ruling, the court believed that defendant's testimony was incredible and that the transactions occurred as West related them and not as defendant testified. Accordingly, the court found that the State rebutted defendant's entrapment defense by proof beyond a reasonable doubt.

Defendant's first and second contentions on appeal relate to his defense of entrapment. Defendant first contends that the circuit court found "in effect" that "as a matter of law there could be no entrapment." Defendant contends next that the State failed to rebut his entrapment defense by proof beyond a reasonable doubt. We reject defendant's contentions.

Defendant's first contention is based upon the following statement made by the circuit court during its finding of guilt:

"And thirdly, the issue you were doing something for someone who's a good friend does not fall within the realm of the entrapment cases that I found. If Mr. Aguilar decided to go out and help a friend by committing an illegal act, that is his choice. He wasn't required to do it, forced to do it. He didn't have any pressure on him to do it other than what he claims is friendship and his friend continued to act. For all those reasons I don't believe it's necessary to call Mr. Stiltner in here to rebut because there is nothing to rebut.

The defendant's own testimony in terms of what he testified to doesn't raise any issue to me as to whether or not this is entrapment."

■ The above statement, taken together with the court's prior statements, makes clear the court believed that the State had overcome defendant's entrapment defense by proof beyond a reasonable doubt, and not, as defendant asserts, that the court believed that no entrapment existed as a matter of law. The court gave three reasons to support its finding; the third reason is set forth above. It was for all these three reasons that defendant was convicted. In other words, the court rejected defendant's entrapment defense because it was not supported by the evidence. It follows, therefore, that defendant's reli-

ance on *People v. Estrada* (1980), 91 Ill. App. 3d 228, 414 N.E.2d 512, *People v. Housby* (1975), 33 Ill. App. 3d 762, 338 N.E.2d 461, and *People v. Carpentier* (1974), 20 Ill. App. 3d 1024, 314 N.E.2d 647, is misplaced. In *Estrada* and *Carpentier*, the appellate court found error in the circuit court's implicit finding that no entrapment existed as a matter of law as a result of its refusal to give an entrapment instruction where the evidence supported such instruction. In *Housby*, the appellate court found that under the evidence presented, the State failed to rebut defendant's entrapment defense. Here, no instruction error has been alleged and, as discussed below, we believe that the State rebutted defendant's entrapment defense by the necessary proof.

■ Defendant next contends that the State failed to rebut his entrapment defense by proof beyond a reasonable doubt. Defendant's entrapment defense is predicated upon section 7—12 of the Criminal Code of 1961:

"A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated." (Ill. Rev. Stat. 1987, ch. 38, par. 7—12.)

Once a defendant raises entrapment as an affirmative defense and presents some evidence thereon, the State is required to prove, in addition to each of the statutory elements of the offense, the absence of entrapment beyond a reasonable doubt. Ill. Rev. Stat. 1987, ch. 38, par. 3—2; *People v. Tipton* (1980), 78 Ill. 2d 477, 401 N.E.2d 528; *People v. Raess* (1986), 146 Ill. App. 3d 384, 496 N.E.2d 1186.

In its findings supporting its conclusion of guilt, the circuit court specifically stated that it believed the transactions occurred as West testified, not as defendant related the events. Under West's testimony, West and defendant dealt directly with one another. West negotiated with defendant over the price for the PCP, and defendant then went to purchase the PCP from his source. Defendant thereafter returned and West exchanged the money for the drugs. Under defendant's version, defendant never had any contact with West. Rather, Stiltner gave money and instructions to defendant on where and from whom to purchase the drugs. Defendant would then purchase the drugs and deliver them to Stiltner. As indicated, the court rejected defendant's testimony.

The case before the court is similar to *People v. Marshall* (1981), 101 Ill. App. 3d 244, 427 N.E.2d 1333. In *Marshall*, defendant sold cocaine to undercover police officers on three separate occasions. The cocaine was supplied to defendant by his longtime and trusted friend, who was also working as a confidential informant for the police. The informant told defendant that he could not sell the cocaine directly because he owed these purchasers money and, thus, they would not pay him for the cocaine. Defendant declined to assist his friend, but after persistent begging and pleading, defendant agreed to make the sale. The jury rejected defendant's entrapment defense. On appeal, in finding the evidence was sufficient to rebut defendant's entrapment defense, the court stated:

> "The likelihood that Cleave's [the informant] coaxing was the predominant cause of defendant's conduct was lessened a great deal by the undisputed evidence that defendant made deliveries on three separate occasions several days apart. While a single delivery could well have resulted from coaxing, the multiple acts would indicate a desire to become involved in the trade and a deliberate intent to do so. Further evidence of defendant's predisposition to do so came from [Officer] Spicer's testimony that: (1) after the first delivery \*\*\*, defendant told Spicer if he were interested in more cocaine, to contact Cleave, and (2) after the [second] deliver[y], defendant told Spicer defendant would have more cocaine for him later. Although defendant denied making at least one of the statements, the jury could have believed Spicer." *Marshall*, 101 Ill. App. 3d at 247, 427 N.E.2d at 1335.

Defendant in this case, as in *Marshall*, entered the drug trades only after initially resisting then succumbing to persistent pleading and begging by a longtime friend. In both cases, the State's testimony was accepted over defendant's conflicting testimony. On review, this court must, as did the *Marshall* court, uphold defendant's conviction since it is supported by the evidence. Where inconsistencies and conflicts exist in the evidence, the trier of fact has the responsibility of weighing the credibility of the witnesses and resolving the conflicts and inconsistencies. (*People v. Green* (1988), 179 Ill. App. 3d 1, 535 N.E.2d 413.) In a bench trial, this responsibility rests with the trial court, and the reviewing court will not substitute its judgment for that of the trier of fact when the evidence is merely conflicting. *People v. Daniels* (1984), 129 Ill. App. 3d 894, 473 N.E.2d 517.

Here, the evidence showed defendant sold PCP, a less common drug, three times; haggled over the price with West; was familiar

with drug terminology and drug transactions; had a steady and regular supply of drugs; told West that he could meet West's needs; and encouraged West to contact Stiltner if he needed more drugs. We believe the circuit court correctly found that this evidence sufficiently rebutted defendant's entrapment defense. Accordingly, we reject defendant's sufficiency argument.

Defendant's final contention on appeal is that the State's failure to disclose favorable evidence prior to trial operated to deny him a fair trial. During defense cross-examination of Officer West, and to the surprise of all concerned, West disclosed for the first time that Stiltner was paid cash for his assistance in arranging the drug transactions. Defendant moved to dismiss the indictment with prejudice, citing his pretrial discovery request which specifically asked the State to disclose: "whether any State's witness has received consideration of any kind *** in exchange for, or in relation to, their [sic] testimony, which would tend to show interest, bias or motive of such witness." The court denied defendant's motion but granted defendant a six-week continuance to prepare his defense in light of the new evidence. In the interim, the court required the State to tender to the defense the reports and documents relevant to the payments Stiltner received. When the trial reconvened, defendant was able to use this information in his cross-examination of Officer West to establish the nature and extent of Stiltner's compensation.

■■ Defendant contends that this court must remand for a new trial because the State's discovery violation substantially prejudiced his defense. Defendant particularized this prejudice at oral argument by informing the court that had the State disclosed the requested information, he *may* not have waived a jury trial. The State responds with numerous arguments which we address below. Because we believe that the State's failure to disclose the requested information irrevocably prejudiced defendant's defense in this case, we hold that defendant is entitled to a new trial.

Defendant's discovery request was made pursuant to Supreme Court Rule 412(c), which provides: "[T]he State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused *** or would tend to reduce his punishment therefor." (73 Ill. 2d R. 412(c).) In implementing this rule, once a trial court determines that a discovery violation has occurred, the court may order further discovery, grant a continuance, exclude the evidence, or impose any sanction which, in its discretion, it deems just under the circumstances. (73 Ill. 2d R. 415(g).) The preferred sanction is a recess or continuance if the grant-

ing thereof would be effective to protect the defendant from surprise or prejudice. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029.) A reviewing court will not reverse the trial court's exercise of its discretion in granting a particular sanction in the absence of a showing of surprise or prejudice to the defendant. *People v. Loggins* (1985), 134 Ill. App. 3d 684, 480 N.E.2d 1293.

In partial response to defendant's argument that a new trial is warranted, the State contends that the continuance alleviated any prejudice defendant suffered as a result of the nondisclosure. The State claims that defendant was able to use the undisclosed evidence to the same extent as if it had been disclosed as requested.

Admittedly, defendant was able to establish Stiltner's monetary bias. If defendant received the requested information prior to trial, his use of it at trial would probably have been no different. Either way, defendant would obtain the same mileage from it. (See *People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970; *People v. Harris* (1988), 123 Ill. 2d 113, 526 N.E.2d 335, *cert. denied sub nom. Wilson v. Illinois* (1988), 488 U.S. 902, 102 L. Ed. 2d 240, 109 S. Ct. 251 (new trial denied where defense otherwise able to effectively impeach State's witness).) Where defendant's prejudice arises, however, and where the State's argument ultimately fails is that defendant was denied the full opportunity to prepare his defense and make tactical decisions with the aid of this information. While this court need not speculate, as we have repeatedly refused to do in numerous cases (see *People v. Weaver* (1980), 90 Ill. App. 3d 299, 412 N.E.2d 1353, *aff'd* (1982), 92 Ill. 2d 545, 442 N.E.2d 255; *People v. Trolia* (1979), 69 Ill. App. 3d 439, 388 N.E.2d 35, *cert. denied* (1979), 444 U.S. 911, 62 L. Ed. 2d 145, 100 S. Ct. 222; *People v. Parton* (1976), 40 Ill. App. 3d 753, 354 N.E.2d 12), to the use a defendant would put undisclosed, favorable information he has requested, we know here that had defendant timely received this information, he may have elected a jury trial over a bench trial. A jury in this case may have come to an altogether different verdict from the one reached by the circuit court. The extreme nature of this prejudice cannot be remedied by a mere continuance. This extreme prejudice also forecloses any suggestion that the discovery violation here was harmless beyond a reasonable doubt.

We also disagree with the State's response that its good faith supports the continuance as the appropriate remedy in light of the circumstances of this case. Defendant here specifically requested information regarding whether Stiltner was a paid informant. It is undisputed that the police had information which was relevant to this

request. As stated in Supreme Court Rule 412(f), the State has an affirmative duty to ensure the free flow of information between the various government branches:

> "The State should ensure that a flow of information is maintained between the various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused and the offense charged." (73 Ill. 2d R. 412(f).)

The State's breach of its duty is particularly egregious here because Stiltner's cooperation resulted in 30 indictments. The State had to know, or at least should have known through appropriate inquiry, of Stiltner's compensation based on the number of cases which moved through the prosecutor's office. Thus, while the State's willfulness in failing to disclose is an appropriate factor in fashioning the proper remedy (*Harris*, 123 Ill. 2d 113, 526 N.E.2d 335), we believe the State's good faith in this case does not require a sanction less than the most severe.

The affirmative duty noted above also renders unpersuasive the State's argument that, because Stiltner was available for the defense to interview, the State's duty to disclose was lessened. The State has an affirmative duty to disclose regardless of Stiltner's availability to the defense.

■ Finally, we reject the State's argument that defendant's decision to only request the extreme remedy of dismissal somehow operates as a waiver of other remedies. Although defendant never requested a new trial, a new trial is clearly within the remedies the circuit court can prescribe for discovery violations. (73 Ill. 2d R. 415(g).) As we have explained, the appropriate remedy was a new trial and not a continuance; only a new trial could eliminate the prejudice to defendant. Our supreme court has sanctioned reversal and the award of a new trial where, as here, the defendant is prejudiced by the discovery violation and the trial court failed to eliminate the prejudice. *Harris*, 123 Ill. 2d 113, 526 N.E.2d 335.

Accordingly, we conclude that the circuit court of Cook County abused its discretion in not granting defendant a new trial, and we therefore reverse and remand.

Reversed and remanded.

MANNING, P.J., and CAMPBELL, J., concur.