Fifth Division

September 2, 2005

No. 1-02-3699

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

Plaintiff-Appellee, )  Cook County.

)

v. )  No. 98 CR 30103

)

ERIC BLACKMAN, )  Honorable

)  James D. Egan,

Defendant-Appellant. )  Judge Presiding.

JUSTICE NEVILLE delivered the opinion of the court:

Eric Blackman, the defendant, was charged in an indictment with three counts of first degree murder and one count of armed robbery.  Following a two-day bench trial, the trial court found Blackman guilty of two counts of first degree murder and sentenced him to 45 years in the Illinois Department of Corrections. Blackman appeals and presents the following issues for our review: (1) whether the trial court erred when it failed to declare a mistrial after Blackman discovered, during his trial, that the State failed to disclose, prior to trial, that it had paid $20,000 for a witness' 
relocation expenses; (2) whether the State proved him guilty beyond a reasonable doubt when a witness was biased and inconsistencies existed in the witness' testimony; (3) whether the trial court erred when it allowed testimony of other crimes that was more prejudicial than probative to show Blackman's "consciousness of guilt"; and (4) whether the trial court erred by failing to find that he was denied effective assistance of counsel pursuant to 
People v. Krankel
, 102 Ill. 2d 181 (1984),  based upon the allegations raised in his 
pro
 
se
 motion for a new trial.

BACKGROUND

The record reveals that Blackman filed a discovery motion.  In paragraph 24 of the discovery motion, Blackman made a request that the State disclose the following information:

"24. Any and all consideration or promises of consideration given to or in behalf of the witness or expected or hoped for by the witness. By 'consideration' defendant refers to absolutely anything, whether bargained for or not, which arguably could be of value or use to a witness, including, but not limited to, leniency, favorable treatment or recommendations or other assistance with respect to any pending or potential criminal, parole, probation, pardon or other dispute with the People or with any other authority and anything else which arguably could reveal an interest, motive or bias in the witness in favor of the People or against the defense or act as an inducement to testify or color testimony."

The State filed an answer to Blackman's discovery requests on March 22, 1999.  The State's answer responds to Blackman's requests 1 through 17.  However, the State's answer failed to respond to requests 18 through 24 in Blackman's motion.  Specifically, the State's answer failed to disclose whether consideration, something of value or use to a witness, was provided to a witness by the State that arguably could reveal an interest, motive or bias in the witness in favor of the State or against the defense or act as an inducement for the witness to testify or color his testimony. 

The State's failure to answer request 24 in Blackman's discovery motion became an issue during the trial.  The State called four witnesses to testify at the trial: Courtney Crosby, Annette McCauley, Jermon Murphy, and Wanda Vickers.  Mr. Crosby testified that he saw Blackman on October 15, 1998, in the townhouse complex where the murder occurred with
 
a 9-millimeter handgun.  Ms. McCauley, whose son (Jermon Murphy) was also a State witness, testified that Blackman brandished a 9-millimeter handgun when he forced his way into her apartment while looking for her son, on October 22, 1998, a few days after the murder. The State also called two witnesses who identified Blackman at the scene of the crime.  Mr. Murphy testified that he had been smoking marijuana and drinking alcohol in the townhouse complex before he observed Blackman on October 15, 1998.  Mr. Murphy testified that he followed Blackman and observed him force Larry Strong, the decedent, into a vehicle, while aiming a 9-millimeter handgun at his back, and that he heard a loud popping sound like a firecracker and saw a flash of light from inside the car. Finally, Mr. Murphy testified that he saw Blackman and another man run from the vehicle. 

The State called Wanda Vickers as its final witness.  Ms. Vickers testified that she woke up when she heard a loud groan, looked out of her bedroom window at a vehicle in the parking lot, and saw a flash of light and heard what she believed was a gunshot on October 15, 1998.  After hearing the gunshot, Ms. Vickers testified that she observed Blackman exit the vehicle.  Ms. Vickers also testified that the State paid approximately $20,000 for her relocation expenses.  When Ms. Vickers disclosed the payment of $20,000 in relocation expenses, Blackman's attorney objected to the testimony.  A sidebar was held but the colloquy from the sidebar was not transcribed or included in the record. However, the record reveals that the trial court offered Blackman a choice of either a continuance or a break in the proceedings. Blackman declined the trial court's offer and the trial resumed and his attorney cross-examined Ms. Vickers.  At the conclusion of Ms. Vickers' testimony, Blackman's attorney made a motion for a mistrial and argued that in response to his motion for discovery, the State failed to disclose that it had paid Ms. Vickers' relocation expenses.  Blackman's attorney stated: (1) that had he known all the facts concerning Ms. Vickers' relationship with the State's Attorney's office, he may have proceeded differently; and (2) that the State failed to provide Ms. Vickers' address.  The trial court denied Blackman's motion for a mistrial and explained that  Blackman had been offered a continuance.  

Once the State rested, Blackman made a motion for a directed verdict.  The trial court held that the State had met its burden of proof on two counts of first degree murder. However, the trial court found that there was no evidence proving that Blackman took property from Strong and, therefore, directed a finding of not guilty on all counts of armed robbery. Blackman elected not to call any witnesses and rested his case. 

The trial court found: (1) that  the State's witnesses, Crosby and Murphy, were unimpeached regarding 
their 
testimony that Blackman approached the minivan they were sitting in on October 15, 1998, with a .9 millimeter handgun;
 (2) that Murphy's 
grand jury
 testimony 
establishes 
that Blackman had a .9 millimeter handgun when he approached the minivan; 
(3) that Blackman took offense to statements made by Strong when he approached the group in the parking lot; (4) that Blackman 
was 
identified going to the abandoned car; (5) that both Murphy and Vickers testified that they heard two 
loud 
groans; (6) that the open wounds visible on Strong's face in the medical examiners photographs corroborate Murphy and Vickers testimony because the injuries are consistent with being struck with great force that would cause a person to groan loudly; (7) that the "pop" Murphy testified that he heard from the car is consistent with the close range contact wound on Strong's body; (8) that Blackman 
was 
identified exiting the car; and (9) that a .9 millimeter cartridge was found in the car.   

The trial court also found: (1) that a discrepancy exists in Murphy's testimony that he was unable
 to positively identify Blackman as the person who forced Strong across the parking lot at gunpoint and into the car; (2) that a discrepancy exists between Murphy and Crosby's  testimony as to whether drinking and smoking marijuana was taking place in the minivan; (3) that a discrepancy exists in Vicker's testimony that she was only able to give a description 
of the person involved when initially contacted by the police, but can now positively identify Blackman; and (4) that a discrepancy exists when Murphy testified that he saw Blackman and Madden enter the car and Vickers testified that she only saw Blackman in the car. The trial court found that the State had met its burden and proved that Blackman committed first degree murder. 
The trial judge found that Jermon's description of hearing two groans before the fatal gunshot was consistent with Ms. Vickers' description of hearing two screams, and that Jermon and Ms. Vicker's statements were corroborated by pictures of Larry's body that showed wounds on his face that indicated that he had been "struck with great force" before being shot. The trial judge also found that the home invasions committed by Blackman against the McCauley residence and the Vickers residence was evidence of Blackman's consciousness of guilt.
 Blackman was convicted of first degree murder and sentenced to 45 years in the Illinois Department of Corrections.  Blackman's motion 
for a new trial was denied: the record reveals that the public defender filed a motion for a new trial and that Blackman filed a motion for a new trial .

ANALYSIS

In this appeal, Blackman argues that  the State violated Supreme Court Rule 412 (c) when it failed to disclose that the State's Attorney's office paid  $20,000 for Ms. Vickers' relocation expenses. 188  Ill. 2d R. 412(c). The State contends that Blackman suffered no prejudice by the untimely disclosure and that a continuance was a "reasonable solution" for the discovery violation. 

First, we must determine whether a discovery violation occurred in this case. Supreme Court Rule 412(a)(I) provides that "the State shall, upon written motion from defense counsel, disclose to defense counsel *** the names and last known addresses of persons whom the State intends to call as witnesses." 188 Ill. 2d R. 412(a)(I).  Supreme Court Rule 412(c) provides that "the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce his punishment therefor." 188 Ill. 2d R. 412(c); 
Brady v. Maryland
, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97 (1963) (where the Court held that the state is required to disclose evidence that is favorable to the accused and material to either guilt or punishment); see also 
Giglio v. United States
, 405 U.S. 150, 154, 31 L. Ed. 2d 104, 108-09, 92 S. Ct. 763, 766 (1972).  "Supreme Court Rule 415(b) (134 Ill. 2d R. 415(b)) provides that once discovery has been conducted, any 
additional
 material or information acquired by either the defendant or the State which is subject to disclosure shall be promptly disclosed." (Emphasis in original.) 
People v. Harris
, 123 Ill. 2d 113, 151 (1988). 

The record is clear that Blackman filed a written motion for discovery requesting the names and addresses of the State's witnesses, and requesting disclosure of any and all consideration given by the State to its witnesses. The State failed to disclose Ms. Vickers' address and its payment of approximately $20,000 for her relocation expenses. Supreme Court Rule 415(b) required the State to inform Blackman each time Ms. Vickers moved to a new residence and the State paid her relocation expenses. 134 Ill. 2d R. 415(b).  We find that the State violated Supreme Court  Rules 412(a)(I) and (c),  and 415(b) when its answer failed to disclose Ms. Vickers' address and failed to disclose that it paid $20,000 for Ms. Vickers' relocation expenses.  188 Ill. 2d Rs. 412(a)(I), (c); 134 Ill. 2d R. 415(b). 

Having found that a discovery violation was committed, we must now determine whether the State's discovery violation warrants a new trial.  The failure to comply with discovery requirements does not in all instances necessitate a new trial.  
Harris
, 123 Ill. 2d at 151.  If a trial court determines that a discovery violation has occurred, the court may order further discovery, grant a continuance, exclude the evidence, or impose any sanction which, in its discretion, it deems just under the circumstances. 
People v. Aguilar
, 218 Ill. App. 3d 1, 9 (1991); 134 Ill. 2d R. 415(b).  The preferred sanction is a recess or continuance if the granting thereof would be effective to protect the defendant from surprise or prejudice. 
Aguilar
, 218 Ill. App. 3d at 9-10; 
People v. Winfield
, 113 Ill. App. 3d 818, 837 (1983).  Supreme court case law makes it clear that a new trial should only be granted if the defendant is prejudiced by the discovery violation and the trial court failed to eliminate the prejudice.  
Harris
, 123 Ill. 2d at 151-52; 
People v. Cisewski
,  118 Ill. 2d 163, 172 (1987).  Among the factors to be considered in determining whether a new trial is warranted are: (1) the strength of the undisclosed evidence; (2) the likelihood that prior notice could have helped the defense discredit the evidence; and (3) the willfulness of the State in failing to disclose.  
Harris
, 123 Ill. 2d at 152. "A reviewing court will not reverse the trial court's exercise of its discretion in granting a particular sanction in the absence of a showing of surprise or prejudice to the defendant."  
People v. Loggins
, 134 Ill. App. 3d 684, 691 (1985). 

Following 
Harris
, we must first determine the strength of the State's undisclosed evidence.  The record establishes that Blackman's discovery motion requested that the State disclose the names and addresses of its potential witnesses and disclose all consideration given to these witnesses that might reveal an interest, motive or bias in the witness in favor of the State.  The State's answer did not provide Blackman with Ms. Vickers' address.  More importantly, the State's answer did not respond to request 24 and, therefore, failed to inform Blackman, prior to trial, that Ms. Vickers received $20,000 from the State in relocation expenses.  Ms. Vickers was an important identification witness because she placed Blackman at the scene of the murder and her testimony was more credible than Murphy's because, prior to the crime, unlike Murphy, she had not been drinking alcohol and smoking marijuana.  The $20,000 paid for Ms. Vickers' relocation expenses was material because $20,000 may have influenced the witness' testimony and because the $20,000 could have been used to establish the bias or interest of the witness in favor of the State. We find that the State's failure, to disclose, prior to trial, the $20,000 it paid for Ms. Vickers' relocation expenses was prejudicial to Blackman because it  affected his ability (1) to prepare his defense and make tactical decisions with the aid of the information, and (2) to impeach Ms. Vickers and establish her bias in favor of the State because she received, directly or indirectly, payments from the State after the commencement of a criminal prosecution. 

Next, we must determine the likelihood that prior notice or notice prior to the trial could have helped Blackman discredit the undisclosed evidence. We believe that notice prior to trial, the notice contemplated by the discovery rules, would have helped Blackman conduct his pretrial investigation.
  
Moreover, if Blackman had evidence that the State paid a witness $20,000 for relocation expenses, he could have used the evidence to discredit Ms. Vickers' testimony and establish that her testimony was influenced by the State's payment of $20,000 in relocation expenses.

Finally, we must determine whether the State willfully failed to disclose the $20,000 payment of relocation expenses to Ms. Vickers. The  record establishes that Blackman filed requests which specifically requested that the State provide  information on its witnesses' addresses and on money it paid to these witnesses.  Since the State paid Ms. Vickers' relocation expenses, the State knew where Ms. Vickers resided but failed to disclose her address when it  answered Blackman's discovery requests. More importantly, the record establishes that the State failed to answer request 24 and failed to inform Blackman that it paid $20,000 for Ms. Vickers' relocations expenses.  By having a copy of Blackman's discovery requests, having the information sought in the requests, but failing to disclose the requested information, the State knowingly failed to disclose information within its possession that might negate the guilt of the accused or reduce his punishment.  See  
Brady
, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97;
 188 Ill. 2d Rs. 412(a)(I), (c); 134 Ill. 2d R. 415(b) . Therefore, we find that the State willfully disregarded Blackman's discovery requests and violated Supreme Court Rules 412(a)(I) and (c), and 415(b).  188 Ill. 2d Rs. 412(a)(I), (c); 134 Ill. 2d R. 415(b) . 

 The real issue in this case is whether the prejudice caused by the State's failure to disclose 
Brady
 evidence and comply with the discovery rules was eliminated by the trial court offering Blackman a continuance. The answer to this question is no.  The record establishes that the State did not respond to Blackman's request that he be informed about money or consideration the State paid to its witnesses.  The $20,000 payment for Ms. Vickers' relocation expenses was critical to Blackman's pretrial preparation and trial strategy.  Specifically, by not knowing prior to trial about the $20,000 payment, Blackman could not make an informed decision about whether he should proceed to trial with a jury or a trial judge serving as the trier of fact. Thus, when Blackman elected a bench trial instead of a jury trial, he did not know that Ms. Vickers' testimony, that placed him at the scene of the crime, might be subject to impeachment or a showing of bias based upon the State paying her relocation expenses. The record is clear that Blackman's attorney stated on the record that had he known all the facts concerning Ms. Vickers' relationship with the State's Attorney's office - - that the State was paying Ms. Vickers' relocation expenses - - he would have proceeded differently. Had the State complied with the mandates of 
Brady
 and Supreme Court Rules 412(a)(I) and ( c), and 415(b), this court would not have to consider two things: (1) whether Blackman would have elected a jury trial over a bench trial; and (2) whether
 a jury would have reached a different verdict.  See  
Brady
, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97; 
Aguilar
, 218 Ill. App. 3d at 10; 188 Ill. 2d Rs. 412(a)(I), (c); 134 Ill. 2d R. 415(b) . 

We find 
Aguilar
 to be instructive in determining whether Blackman was prejudiced by the State's discovery violation. The arresting officer in 
Aguilar
 revealed during cross-examination that an informant had been paid cash for his assistance in arranging the drug transactions in question. 
Aguilar
, 218 Ill. App. 3d at 9.  In 
Aguilar
, the defendant moved to dismiss the indictment and cited to his pretrial discovery request for the State to disclose any consideration of any kind paid to a witness in exchange for, or in relation to, testimony. 
Aguilar
, 218 Ill. App. 3d at 9. The trial court denied the motion but granted a six-week continuance. 
Aguilar
, 218 Ill. App. 3d at 9. The 
Aguilar
 court had to decide whether the six-week continuance was an appropriate discovery sanction under Supreme Court Rules 412(c) and (f). 
Aguilar
, 218 Ill. App. 3d at 9-11; 73 Ill. 2d Rs. 412(c), (f). 
The 
Aguilar
 court found that the defendant suffered prejudice because, if he had timely received the information, he may have elected a jury trial over a bench trial. 
Aguilar
, 218 Ill. App. 3d at 10.  The court reversed and remanded the cause for a new trial. 
Aguilar
, 218 Ill. App. 3d at 11. 

In this case, the facts are nearly identical to those in 
Aguilar
. The record reveals: (1) that Ms. Vickers disclosed during direct examination that the State had paid $20,000 for her relocation expenses; (2) that the trial court offered Blackman a continuance which he declined; (3) that Blackman's attorney made a motion for a mistrial at the conclusion of Ms. Vickers' testimony; and (4) that the trial court denied Blackman's motion for a mistrial stating that Blackman had been offered a continuance.  In light of 
Aguilar
, we find that the prejudice arose (1) when the State violated 
Brady
 and Supreme Court Rules 412(a)(I) and (c), and 415(b) by failing to disclose Ms. Vickers' address and the $20,000 that was paid for her relocation expenses; and (2) when Blackman elected to have a bench trial instead of a jury trial without knowing that the State had paid $20,000 in relocation expenses for Ms. Vickers.   See 
Brady
, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97;  188 Ill. 2d Rs. 412(a)(I), (c); 134 Ill. 2d R. 415(b) . We also find that the trial court's offer of a continuance could not cure the fact that Blackman elected a bench trial without knowing about the State's payment of $20,000 for Ms. Vickers' relocation. The right to a jury trial is a fundamental right and there can only be a valid jury waiver of that right if a defendant has complete disclosure from the State before electing a bench instead of a jury trial.  Blackman could not make an informed and intelligent waiver of his right to a jury trial because the State violated the discovery rules.  Therefore, the prejudice Blackman experienced when he elected a bench trial instead of a jury trial cannot be remedied by a continuance and forecloses any suggestion that the discovery violation here was a harmless trial court error. 
Aguilar
, 218 Ill. App. 3d at 10.

The Illinois Supreme Court has sanctioned reversal and the award of a new trial where, as here, the defendant is prejudiced by a discovery violation and the trial court failed to eliminate the prejudice. 
Harris
, 123 Ill. 2d at 151-52. 
 Once jeopardy attached when the State called its first witness, the only way the trial court could eliminate Blackman's prejudice was to order a new trial and permit Blackman, with full disclosure from the State, to make an informed decision as to whether he wanted a bench or jury trial.  Therefore, we find that the trial court abused its discretion by not granting Blackman a new trial, and we remand this case for a new trial so Blackman can make an informed decision and elect whether he wants a bench or a jury trial. 
Aguilar
, 218 Ill. App. 3d at 11.

In light of our finding that the State violated the discovery rules, we need not address the other issues  Blackman raised in his brief.
 
People v. McDonald
, 125 Ill. 2d 182, 201 (1988). 
  However, we must address Blackman's argument that the evidence was insufficient to prove him guilty beyond a reasonable doubt. See 
People v. Taylor
, 76 Ill. 2d 289, 309 (1979).  
The Illinois Supreme Court stated in 
People v. Mink
, 141 Ill. 2d 163, 173-74 (1990):

"The United States Supreme Court has repeatedly distinguished, for double jeopardy purposes, between judgments reversing convictions because of trial error and those reversing convictions for evidentiary insufficiency. (
Lockhart v. Nelson (1988), 488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285; Burks v. United States (1978), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141
.)  Reversal for trial error is a determination that the defendant has been convicted through a judicial process which is defective in some fundamental respect; 
e.g.
, incorrect receipt or rejection of evidence, incorrect instructions or prosecutorial misconduct.  (
Burks v. United States (1978), 437 U.S. 1, 15, 57 L. Ed. 2d 1, 12, 98 S. Ct. 2141, 2149
.)  The double jeopardy clause does not preclude retrial of a defendant whose conviction is set aside because of an error in the proceedings leading to the conviction.  
Burks v. United States (1978), 437, U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141.

Reversal for evidentiary insufficiency, on the other hand, occurs when the prosecution has failed to prove its case and the only proper remedy is a judgment of acquittal.  The double jeopardy clause precludes the State from retrying a defendant once a reviewing court has determined that the evidence introduced at trial was legally insufficient to convict.  
Tibbs v. Florida (1982), 457 U.S. 31, 72 L. Ed. 2d 652, 102 S. Ct. 2211
; 
Burks v. United States (1978), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141
; 
People v. Holloway (1982), 92 Ill. 2d 381.
"

In this case,  Blackman was charged with two counts of first degree murder.  
To prove the crime of murder it is not necessary to show that a defendant had a specific intent to kill or do great bodily harm or that he knew with certainty that his acts would achieve those results. 
People v. Bartall
, 98 Ill. 2d 294, 307 (1983). " 'It is sufficient to show that he voluntarily and wilfully committed an act, the natural tendency of which was to destroy another's life.' "  
Bartall
, 98 Ill. 2d at 307, quoting  
People v. Latimer
, 35 Ill. 2d 178, 182-83 (1966).
 We find that the evidence in this case was sufficient to support a guilty verdict. Therefore, since this case is being reversed because Blackman's conviction resulted from a denial of due process in a fundamental respect, herein prosecutorial nonfeasance, 
i.e.
, the State's failure to comply with the discovery rules, and not because of evidentiary insufficiency, the double jeopardy clause does not preclude the State from retrying the defendant.  See 
Mink
, 141 Ill. 2d at 173-74.

For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded for a new trial. 

Reversed and remanded.

O'BRIEN, J., and GALLAGHER, P. J., concur.