FIFTH DIVISION
JUNE 1, 2007

1-05-0357

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 3248 |
| | ) | |
| JAMAL BAKR, | ) | Honorable |
| | ) | Nicholas Ford, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, defendant-appellant Jamal Bakr (defendant) was convicted of first degree murder and aggravated battery with a firearm and sentenced to consecutive 50- and 10-year prison terms. On appeal, defendant contends (1) that the trial court erred in admitting the videotaped statements of two codefendants as substantive evidence against defendant, and (2) that he was denied a fair trial due to the cumulative impact of instances of prosecutorial misconduct. For the reasons that follow, we affirm.

FACTS

On the evening of October 19, 2001, Elmercelo Rivera, Daniel Ortiz, Wanda Colon, Luis Colon, and Gene Colon were in the vicinity of 43rd Street and Ashland Avenue in Chicago, Illinois, to watch some drag races. The races took place every weekend during the summer, and the people who took part in them were known locally as "Racers." On this particular evening, the races were broken up by police just after midnight. At this time, Elmercelo, Daniel, Wanda, Luis, and Gene left the area and went to a Dunkin Donuts shop in a strip mall on 43rd Street and Ashland where they ordered food.

The group was standing in the parking lot by Elmercelo's car finishing their food when a blue Chevrolet Astro van drove by. The van was driven by Antonio Gomez, a member of the Almighty Latin Saints gang. Gomez was accompanied by fellow gang members Jesus Nevarez, Oscar Garcia, Jorge Melendez, and defendant. When the men saw Elmercelo, Daniel, Wanda,

Luis and Gene in the parking lot, they assumed that they were Racers. This angered the men because they believed that one of their fellow gang members had recently been shot at by some Racers.

Defendant and his fellow gang members then drove to 44th and Marshfield, picked up a gun from another member of the Almighty Latin Saints gang, Armando Montelongo, and returned to the vicinity of the Dunkin Donuts. Garcia exited the van to see if the group of suspected Racers was still at the Dunkin Donuts. He waved back to defendant indicating that they were. Defendant then exited the van, approached Elmercelo and his friends, fired three shots in their direction, and ran back to the van. The Saints then drove back to the alley by Montelongo's house, where defendant told Montelongo that he had "shot a guy and saw him fall" and that he "thought he shot a second guy."

Back at the Dunkin Donuts, Elmercelo found Daniel lying on the pavement. Daniel told Elmercelo that his back hurt and he could not move. Elmercelo also realized that his buttocks were burning and his pants were torn. Elmercelo grabbed Daniel, put him inside the car, and, in an effort to find the police, the group drove back to where the races had been. Two ambulances arrived on the scene and took Daniel and Elmercelo to Cook County Hospital. Daniel later died at the hospital due to a gunshot wound to the back. Elmercelo was treated for a gunshot wound to the buttocks.

The Chicago police department immediately began their investigation. The officers on the scene recovered three discharged 9-millimeter cartridge casings in the parking lot. They also interviewed Wanda, Elmercelo, Luis, and Gene. Based on their interviews, the Chicago police officers concluded that the suspected shooter was a white male, Hispanic, about 18 years of age, 5 feet 8 inches tall, with a medium build and light complexion and wearing a dark or black hooded sweatshirt and dark or black jeans.

The Chicago police were unable to identify any suspects in the shooting until January 16, 2002, when Nevarez was arrested for engaging in three separate narcotics transactions with undercover Chicago police officers. Upon learning of the severity of the drugs charges he was facing, Nevarez told the Chicago police officers he had some information on the homicide in question. On the basis of this information, the Chicago police subsequently arrested defendant, Garcia, Melendez, and Montelongo.

The State jointly indicted defendant, Oscar Garcia, Jesus Nevarez, Jorge Melendez, and Armando Montelongo, for, *inter alia*, first degree murder of Daniel Ortiz and aggravated battery with a firearm of Elmercelo Rivera. Prior to trial, Nevarez, Melendez, and Montelongo pled guilty to second degree murder and were sentenced to 12, 10, and 10 years, respectively. Defendant filed a motion to quash arrest and suppress his alleged oral inculpatory statements to Chicago Police and any evidence of defendant being identified in a police lineup. The trial court denied the motion, finding that the Chicago police had probable cause to arrest defendant in light of Nevarez's statements to the police, in which he implicated defendant in the shootings. Defendant and Garcia were set for a double jury trial, but Garcia did not appear for trial on the day testimony was to commence. The trial court issued a bond forfeiture warrant for Garcia and proceeded with defendant's jury trial.

The State's first witness was Mayra Ortiz, mother of both Daniel Ortiz and Elmercelo Rivera. During her testimony, Mayra stated that Daniel was "developmentally disabled." The prosecutor asked what that term meant, and defense counsel objected. The objection was sustained. After Mayra's testimony, defense counsel made a motion for mistrial based on her testimony, stating that the prosecution had asked certain questions in an attempt to invoke sympathy for the victim. The trial court denied the motion for mistrial and promised to instruct the jurors not to be swayed by either sympathy or prejudice.

The State proceeded with its case by calling a number of witnesses, including Luis Colon, who identified defendant as the shooter from that night, and Detective Anthony Powell, who testified that defendant told him that he shot "in the direction of" the victims that night. The State also called several of the codefendants who had previously offered evidence to Chicago police implicating defendant in the shooting. Among the codefendants was Nevarez, who testified that he remembered neither his conversations with the Chicago police officers at the station upon his arrest nor his statements in several portions of the videotaped interview he had with the Chicago police officers.

During Nevarez's testimony, defense counsel objected and requested a sidebar. Defense counsel argued that the nature of Nevarez's testimony rendered him essentially unavailable for cross-examination and that allowing the prosecution to introduce his video statement violated the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). The trial court concluded that *Crawford* was inapplicable and decided that the videotape would be admissible under section 115-10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.1 (West 2004)). Subsequently, Nevarez's attorney testified that Navarez had sworn that the facts in his videotaped statement were true and that he had gone over a copy of a transcript of the video statement with his client prior to Nevarez accepting the plea. The State then authenticated the videotape through the detective who conducted the interview of Nevarez, and the tape was played for the jury.

Montelongo also was among the codefendants who testified at trial, although he testified that he could not remember the details of the murder or his arrest. Montelongo claimed that he did not remember anyone coming to his home on the night of the shooting and that he did not remember either getting a gun from or giving a gun to defendant. He did recall getting arrested and speaking with a detective subsequent to his arrest, although he stated that he did not recall the substance of the conversations he had with Chicago police officers. Over defense counsel's

objection, Montelongo's videotaped statement was admitted as substantive evidence under section 115.10 as well. Montelongo's videotaped account of the shooting incident was substantially similar to Nevarez's videotaped account. Montelongo added that defendant had given him a loaded .9-millimeter gun the day before the incident and that this gun was the same one eventually used. Montelongo also indicated that after the shooting, defendant told him that he saw one of the people he was shooting at "fall."

Following all of the testimony, the State rested its case-in-chief. Defendant's counsel moved for a directed finding, which was denied by the trial court. Defendant then took the stand on his own behalf. Defendant testified that he recalled being arrested, but recalled that he had no idea why he was being arrested. He testified that he had told the police that he could not have been involved in the shooting because he had a cast on from September to October 2001. He added that he had not left his house except to go to the backyard for air or to see his girlfriend at her house. Defendant stated that during the period of time surrounding the murder he was trying to stay away from the neighborhood and the gang. Defendant denied knowing anything about the shooting and stated that Nevarez, Montelongo, and Melendez were all lying. Defendant also denied making any inculpatory statements to Detective Powell regarding the shooting.

After closing arguments were delivered by both sides, the jury was instructed by the trial court that neither sympathy nor prejudice should influence the jury. Following deliberations, defendant was found guilty of first degree murder and aggravated battery. On October 29, 2004, defendant filed a motion for a new trial, which was denied by the trial court. The trial court sentenced defendant to 25 years in the Illinois Department of Corrections for his first degree murder conviction. The court also made a specific finding that defendant had personally discharged a firearm and added an additional 25 years to his sentence. The trial court also sentenced defendant to 10 years based on the aggravated battery with a firearm charge to be

served consecutive to the 50-year first degree murder sentence. Defendant’s motion to reconsider the sentence was denied. Defendant appeals.

DISCUSSION

On appeal, defendant first contends that the trial court erred by allowing the State to admit the videotaped statements of Jesus Nevarez and Armando Montelongo. Specifically, Defendant argues that his constitutional rights under the confrontation clause, as enumerated by the United States Supreme Court in *Crawford v. Washington,* 541 U.S. at 36, 158 L. Ed. 2d at 177, 124 S. Ct. at 1354, were denied when the trial court admitted the videotaped statements "because Nevarez and Montelongo were unavailable for cross-examination." Before addressing whether the trial court erred when it admitted the videotaped statements, we must determine the appropriate standard for reviewing the trial court's evidentiary ruling.

Defendant, relying on our supreme court's decision in *People v. McClanahan,* 191 Ill. 2d 127, 132 (2000), contends that we should review the trial court's decision to admit the videotaped statements *de novo* because, according to defendant, the trial court's evidentiary ruling depended upon a question of constitutional law. *McClanahan*, however, dealt with the issue of whether an Illinois *statute* was constitutional, and, assessing the appropriate standard of review, our supreme court stated that the issue of whether a statute is constitutional should be reviewed *de novo*. *McClanahan,* 191 Ill. 2d at 132. While it is true that challenges to the constitutionality of statutes are reviewed *de novo*, our supreme court has confirmed that evidentiary rulings, such as the one presented by this case, are within the sound discretion of the trial court and should not be reversed absent an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001), quoting People v. Williams, 188 Ill. 2d 365, 369 (1999), (holding that reviewing courts should defer to trial court's evidentiary rulings even if they involve legal issues unless "<trial court's exercise of discretion has been frustrated by an erroneous rule of law>"); see also *People v. Purcell*, 364 Ill. App. 3d 283, 294 (2006) (citing to *Caffey* and applying abuse of discretion standard when

reviewing whether trial court's admission of grand jury testimony violated *Crawford*). Therefore, in reviewing the trial court's decision to admit the videotape recordings, we will assess whether the trial court abused its discretion. *Caffey*, 205 Ill. 2d at 89. "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Caffey*, 205 Ill. 2d at 89.

As stated, the initial issue raised by defendant's appeal is whether his rights under the confrontation clause were violated by the trial court's decision to admit into evidence the videotaped statements of Nevarez and Montelongo. The trial court admitted the videotaped statements provided by Nevarez and Montelongo as substantive evidence pursuant to section 115-10.1 of the Code of Criminal Procedure (725 ILCS 5/115-10.1 (West 2004)). Defendant does not argue that the trial court abused its discretion by admitting the videotaped statements into evidence pursuant to section 115-10.1; rather, defendant contends that the admission of the evidence violated his rights under the confrontation clause of the sixth amendment of the United States Constitution. Specifically, defendant asserts that his constitutional right to confront witnesses was violated because Nevarez and Montelongo testified that they did not recall making the videotaped statements and, therefore, Defendant was unable to cross-examine either witness. We disagree.

The confrontation clause of the sixth amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. This amendment applies to the states pursuant to the due process clause of the fourteenth amendment. U.S. Const., amend. XIV. The Illinois Constitution echoes the confrontation clause in article 1, section 8, which provides that "[i]n criminal prosecutions, the accused shall have the right *** to be confronted with the witnesses against him or her." IL. Const. 1970, art. I, §8.

In *Crawford v. Washington*, the United States Supreme Court reinterpreted the Confrontation Clause and held that the "testimonial" hearsay statements of a witness who is unavailable at trial may not be admitted against a criminal defendant unless the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 42, 158 L. Ed. 2d at 187, 124 S. Ct. at 1359. The *Crawford* Court also confirmed that "when the declarant *appears* for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." (Emphasis added.) *Crawford*, 541 U.S. at 60 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1370 n.9. Furthermore, in *People v. Desantiago,* 365 Ill. App. 3d 855, 870 (2006), we elaborated on the *Crawford* Court's reinterpretation of the confrontation clause and held that “a defendant’s rights under the confrontation clause are not absolute; rather, ‘the confrontation clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish'" (emphasis in original) quoting *People v. Jones*, 156 Ill. 2d 225, 243-24, 620 N.E.2d 325 (1993)). See also *People v. Redd*, 135 Ill. 2d 252, 310, 553 N.E.2d 316 (1990) (confrontation clause is not violated as long as declarant is actually testifying as a witness and is subject to cross-examination). Moreover, no confrontation clause problems exist simply because a declarant's alleged memory problems precluded the declarant from being cross-examined to the extent that defense counsel would have liked. *Desantiago*, 365 Ill. App. 3d 855, citing *Mercer v. United States,* 864 A.2d 110, 114 (D.C. 2004).

Here, defendant contends that Nevarez's and Montelongo’s ability to recall neither “making their statements nor the incident that was the subject of their statements” rendered the witnesses “unavailable” for effective confrontation, and therefore the admission of their videotaped statements into evidence deprived defendant of his rights under the confrontation clause. Contrary to defendant's assertion that Nevarez and Montelongo were unavailable, this record confirms that both Nevarez and Montelongo physically appeared at trial and were

subject to cross-examination by defendant's defense counsel. Defense counsel was afforded the opportunity to cross-examine the witnesses on issues such as the witnesses' bias and the witnesses' motive to lie. Furthermore, defense counsel elicited testimony on cross-examination from Nevarez that he said "whatever he would to get him out of trouble" and from Montelongo that "he said whatever he needed to get out of the police station." In doing so, defendant had the ability to impeach the witnesses' credibility, therefore satisfying the confrontation clause's goal of challenging the reliability of adverse evidence. Faced with this record, which confirms that Navarez and Montelongo were present at trial and subject to cross-examination, we cannot agree with defendant's contention that his constitutional rights under the confrontation clause were violated by the admission of Navarez's and Montelongo's videotaped statements.

Defendant's second claim of error is that defendant was denied a fair trial by the cumulative impact of instances of prosecutorial misconduct committed by the State. Specifically, defendant alleges that the prosecutors (1) improperly elicited testimony that the victim was developmentally disabled, (2) repeatedly asked defendant to comment on the veracity of the State's witnesses, and (3) made several improper arguments during rebuttal closing argument, including shifting the burden of proof, misstating the extent of the presumption of innocence, and making comments that penalized defendant for exercising his rights to counsel at trial.

Because defendant failed to object to any of these alleged instances of improper conduct and failed to include them in his posttrial motion, we address each of defendant's allegations using the plain error standard set for in Illinois Supreme Court Rule 615(a)(134 Ill. 2d R. 615(a)). In a criminal case, the plain error doctrine may be invoked in two instances: first, where the evidence in the case is closely balanced, and, second, where to leave the error or errors uncorrected raises a substantial risk that an accused was denied a fair

trial and remedying the error or errors is necessary to preserve the integrity of the judicial process. *People v. Shaw*, 186 Ill. 2d 301, 326-27 (1998). The error or errors must be so fundamental to the integrity of the judicial process that the trial court could not cure the error or errors by sustaining an objection or instructing the jury to disregard the errors. *Shaw*, 186 Ill. 2d at 327.

In this case, we cannot say that the evidence was closely balanced. The evidence against defendant included eyewitness identification by Luis Colon, who identified defendant as the shooter with "one hundred percent" certainty. The State also presented the accounts of several of defendant's cooffenders, each of whom identified defendant as the shooter. Additionally, Jesus Nevarez testified to seeing defendant fire the gun in the direction of the victims. Finally, Detective Powell testified regarding defendant's incriminating statements, which included defendant's admission that he shot "in the direction of" the victims. Given the substantial evidence against defendant, his conviction will not be overturned based on the alleged prosecutorial misconduct unless the alleged misconduct is of such a magnitude that defendant was denied a fair trial and remedying the error or errors is necessary to preserve the integrity of the judicial process. We address each of the alleged errors in turn.

First, defendant argues that the prosecutor improperly elicited testimony from the victims mother, Mayra Ortiz, suggesting that the victim was developmentally disabled. While we agree that discussing the victim's mental disability is immaterial to defendant's guilt or innocence, eliciting testimony regarding the personal traits of a victim is only reversible error where the testimony is presented in a manner that causes the jury to believe it is material, rather than incidental. *People v. Williams*, 147 Ill. 2d 173, 229 (1991). Our supreme court has confirmed that where, as here, the testimony regarding the victim's mental condition was elicited by the prosecutor in the form of a single question and not referenced during the rest of the trial, such conduct was not reversible error. See *People v. Page,* 155 Ill. 2d 232, 270

(1993). Therefore, because the reference to the victim's mental condition was limited to an isolated question and not referred to again, we do not find that this constituted prosecutorial misconduct such that defendant was denied a fair trial.

Second, defendant claims that the prosecutors engaged in improper cross-examination by asking the defendant to comment on the veracity of the State's witnesses. We disagree. During direct examination, defendant accused all of the witnesses testifying against him of lying. By raising the issue of the witness' veracity, defendant opened the door for the prosecution to challenge defendant's credibility. *People v. Millighan*, 265 Ill. App. 3d 967, 972 (1994). Furthermore, the scope of cross-examination is in the sole discretion of the trial court and will not be reversed absent an abuse of that discretion. *People v. Baugh*, 358 Ill. App. 3d 718, 739 (2005).  Accordingly, we do not believe that the State's cross-examination of defendant was in any way improper and we certainly cannot say that the cross-examination undermined his right to a fair trial.

Third, defendant claims that the prosecutor made several improper arguments during rebuttal closing argument, including shifting the burden of proof, misstating the extent of the presumption of innocence, and making comments that penalized defendant for exercising his rights to counsel at trial. However, prosecutors are afforded wide latitude in closing arguments (*People v. Wood*, 341 Ill. App. 3d 599, 612 (2003)), and comments made during a prosecutor's rebuttal argument will not be deemed improper if they were invited by defense counsel's closing argument. *People v. Watson*, 342 Ill. App. 3d 1089, 1093 (2003). Here, the prosecution's rebuttal argument addressed defendant's credibility and was a direct response to the defendant's attempt to convince the jury of defendant's credibility, a tactic that has been held proper by this court.  Furthermore, the prosecutor did not improperly shift the burden of proof by pointing out that defendant failed to volunteer an credible explanation for his whereabouts on the night of the murder, especially since defendant suggested he could not

have committed the crime because he was wearing a cast at the time of the shooting and because he only left his home to visit his girlfriend . See *People v. Watkins*, 220 Ill. App. 3d 201, 209 (1991) (comments that would be otherwise constitute an inappropriate shifting of burden are not improper when the comments are an invited response to insinuations by the defendant or defense counsel). Finally, it is clear that the prosecutor did not improperly misstate the extent of defendant's presumption of innocence; rather, this record confirms that the prosecutor's statement was limited to a suggestion that the State's overwhelming evidence would "remove" the presumption of innocence to which defendant was entitled. This comment, viewed in its proper context, was meant to comment on the quality of the State's case rather than on the presumption of innocence to which defendant was entitled. *People v. Cisewski*, 118 Ill. 2d 163, 178 (1987) (holding that prosecutor's statement to the jury, "'Now is the time, Ladies and Gentlemen, to remove the cloak of innocence from this defendant'" was not an improper misstatement of presumption of innocence). Accordingly, we hold that the State did not engage in prosecutorial misconduct and that, even if these acts were deemed improper, the cumulative impact of these acts would not have denied the defendant his right to a fair trial.

Defendant's final argument on appeal is that he is entitled to an additional 362 days of credit against his sentence based on the time he spent in custody from January 17, 2002, which was the date on which defendant was arrested, until December 14, 2004, which was the date on which defendant was sentenced. The State concedes that defendant is entitled to 362 days of credit. Pursuant to Supreme Court Rule 615 (134 Ill. 2d R. 615), "a reviewing court on appeal may correct the mittimus at any time, without remanding the cause to the trial court". *People v. Whitfield*, 366 Ill. App. 3d 448, 451 (2006). Therefore, we order the correction of that portion of the mittimus to reflect the 362 days of credit.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed and the mittimus corrected.

AFFIRMED.

O'BRIEN, P.J., and GALLAGHER, J., concur.